UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DOUGLAS UHL,

               Plaintiff,            <u>MEMORANDUM & ORDER</u>
                                                08-CV-3064 (JS)(ETB)
    -against-

HOME DEPOT U.S.A., INC.,

               Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:     Dawn A. Lott, Esq.
                   Gerald V. Dandeneau, Esq.
                   Dandeneau & Lott
                   425 Broad Hollow Road, Suite 418
                   Melville, NY 11747

For Defendant:     Steven W. Williams, Esq.
                   Suzanne Kathleen Lehman, Esq.
                   Smith Sovik Kenderick & Sugnet
                   250 South Clinton Street, Suite 600
                   Syracuse, NY 13202

Mediator:          James F. Matthews

SEYBERT, District Judge:

        This is a disability discrimination case brought under the Americans with Disabilities Act and the New York State Human Rights Law. Defendant Home Depot U.S.A., Inc. has moved for summary judgment. For the following reasons, that motion is GRANTED.

<u>BACKGROUND</u>

        In 1993, Plaintiff Douglas Uhl began working as a full-time Sales Associate at Home Depot, first in Farmingdale, New York, and

1

later in Copiague, New York. (Def. 56.1 Stmt. ¶¶ 1-2).[1] His duties required him to walk continuously throughout the day, climb ladders, lift and move items up to 95 pounds, and further required him to bend, stoop, reach, twist, push and pull. (Id. ¶ 3).

In October 2003, Mr. Uhl injured his knee while working for the Postal Service. (Pl. 56.1 Stmt. ¶ 6). On his doctor's recommendation, Mr. Uhl took a leave of absence from both jobs. (Id.). In December 2003, Mr. Uhl received medical clearance to resume work at both jobs, if he adhered to limitations regarding how long he could walk, climb, kneel or bend. (Id. ¶ 7). Home Depot agreed to accommodate Mr. Uhl by placing him on "light duty" status. (Pl. Opp. Br. at 3).

In June 2005, Mr. Uhl underwent knee surgery and took a three month leave of absence from both jobs. (Pl. 56.1 Stmt. ¶ 8) On September 19, 2005, Mr. Uhl's physician, Dr. Jan Koenig, issued him a Duty Status Report that permitted him to return to work, but

---

[1] For the most part, Mr. Uhl's Rule 56.1 Statement does not comply with Local Rule 56.1(c). Rather than "specifically controvert[ing]" most of Home Depot's paragraphs, Mr. Uhl instead tends to rephrase Home Depot's statements with more pro-Mr. Uhl language, then adds additional information to place Home Depot's factual statements in context. See Local Rule 56.1. Due to this non-compliance, the Court deems many of Home Depot's Rule 56.1 Statements admitted. Id. In addition, rather than tell the Court where it can find various documents (i.e., "Def.Disc.Resp.," "Home Depot response to NYSHRL Verified Complaint") cited in their papers, both parties effectively ask the Court to "go fish." This behavior has wasted the Court's time, delaying this Memorandum and Order.

subject to numerous medical restrictions. (Pl. Ex. 11). Among other things, Dr. Koenig limited Mr. Uhl to standing two hours a day and walking two hours a day, and entirely prohibited Mr. Uhl from climbing, kneeling, bending, stooping, or twisting. (Id.). Dr. Koenig drafted these restrictions with Mr. Uhl's Postal Service job in mind. (Koenig Tr. at 22, 27). Dr. Koenig had no "records" of Mr. Uhl's part-time Home Depot job. (Id. at 28). At deposition, Dr. Koenig testified that the walking restrictions specifically concerned his letter carrier job, because it involved "uneven surfaces, there's cracks and all that twisting and micro motion was affecting his knee." (Id. at 27). So walking during his "other job might be different than the walking of a letter carrier." (Id. at 29). But Dr. Koenig testified that his instruction that Mr. Uhl not stand for no more than two hours a day applied no matter where he stood. (Id. at 72).

Following Dr. Koenig's September 19th Duty Status Report, Mr. Uhl sought to resume his Home Depot job. (Pl. 56.1 Stmt. ¶ 10). Home Depot refused Mr. Uhl's request, insisting that he be 100% better before he returned to work. (Pl. 56.1 Stmt. ¶ 10). Dr. Koenig's September 19 Report did, however, enable Mr. Uhl to resume his full-time letter carrier job, subject to the aforementioned medical restrictions. (Def. 56.1 Stmt. ¶ 26).

On October 10, 2005, Carolyn Otero, a Home Depot Human

Resources Manager, wrote Mr. Uhl. (Uhl Dep. Ex. Y). Ms. Otero informed him that, although his medical leave had expired, he had neither returned to work nor sought to extend his leave. (Id.).

Mr. Uhl responded to Ms. Otero's letter by providing Home Depot with a copy of the October 11, 2005 Duty Status Report that Dr. Koenig had prepared. (Def. 56.1 Stmt. ¶ 12; Def. Ex. A at p. "Uhl 11"). The October 11 and September 19 Duty Status Reports imposed identical medical restrictions, which resembled the restrictions Dr. Koenig imposed in 2003, when Home Depot permitted Mr. Uhl to work light duty. (Koenig Dep. Exs. W; Pl. Ex. 11; Pl. 56.1 Stmt. § 12). Likewise, both the September 19 and the October 11 Duty Status Reports concerned Mr. Uhl's letter carrier employment, not his part-time Home Depot job. Nevertheless, in light of the October 11 Report, Home Depot extended Mr. Uhl's medical leave until December 26, 2005. (Def. Ex. A at p. "Uhl 12").

On December 22, 2005, Dr. Koenig prepared another Duty Status Report, and Mr. Uhl provided Home Depot with a copy later that day. (Koenig Dep. Ex. V; Def. 56.1 Stmt. ¶ 14). This Duty Status Report maintained the same medical restrictions, and again solely concerned Mr. Uhl's Postal Service job. (Koenig Dep. Ex. V).

On March 26, 2006, Dr. Koenig prepared still another Duty Status Report, which Mr. Uhl then provided to Home Depot. (Koenig Dep. Ex. U; Def. 56.1 Stmt. ¶ 16). This Duty Status Report imposed

4

even more severe restrictions than the previous Reports, as it precluded Mr. Uhl from walking in addition to climbing, kneeling, bending, stooping, and twisting. (Koenig Dep. Ex. U). Once again, it solely concerned Mr. Uhl's Postal Service job. (Id.).

On April 25, 2006, Home Depot wrote Mr. Uhl to inform him that, if he did not return to work by June 21, 2006, his employment would end. (Uhl Tr. 143; Def. Ex. A at "Uhl 34"). Around this time, Home Depot also gave Mr. Uhl a Physical Capabilities Evaluation Form for his doctor to complete. In response, Mr. Uhl provided medical documentation that "was good from October of '03 to June of '05." (Uhl Tr. 144). But Mr. Uhl waited two months before bringing the Physical Capabilities Evaluation Form to Dr. Koenig's office. (Def. 56.1 Stmt. ¶¶ 41, 42). And, once he did, he asked Dr. Koenig's assistant, not Dr. Koenig, to fill it out. The completed form purported to relax or remove Mr. Uhl's restrictions on climbing, bending, and twisting. (Uhl Dep. Ex. A). But it still set forth that Mr. Uhl could only walk for two hours a work day. (Id.).

At no time did Mr. Uhl ever provide Home Depot with documentation attesting that he could physically perform both his full-time letter carrier job, and his part-time Home Depot position. (Def. 56.1 Stmt. ¶ 43). In fact, Dr. Koenig did not even know about Mr. Uhl's Home Depot job. (Def. 56.1 Stmt. ¶ 44). So he never had the opportunity to formulate an opinion about whether Mr. Uhl could

5

perform this job. (Koenig Tr. at 68-69).

On June 21, 2006, Home Depot terminated Mr. Uhl.

DISCUSSION

I. Standard of Review

"Summary judgment is appropriate where there is no genuine dispute concerning any material facts, and where the moving party is entitled to judgment as a matter of law." Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once

such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "Mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

In discrimination claims brought under the ADA and the NYSHRL, the burden-shifting framework established by the Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), applies. See Ferraro v. Kellwood Co. 440 F.3d 96, 99-100 (2d Cir. 2006). That framework requires a plaintiff in a disability-discrimination case to establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action in question. Id. Once the defendant provides such a reason, the plaintiff must show "sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext" for discrimination. Id. (internal citations and quotations omitted).

To establish a prima facie case of disability discrimination under the ADA or the NYSHRL, a plaintiff must show that: (1) the employer is subject to the relevant statute; (2) the plaintiff is disabled within the statute's meaning; (3) the plaintiff was otherwise qualified to perform the essential functions of his

7

job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Heyman v. Queens Village Committee for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999); Attis v. Solow Realty Development Co., 522 F. Supp. 2d 623, 627 (S.D.N.Y. 2007)(standards for a prima facie case the same under NYSHRL).

II. Home Depot's Motion

Home Depot seeks summary judgment on three alternative (and contradictory) grounds. First, Home Depot argues that Mr. Uhl was not disabled. Second, Home Depot contends that Mr. Uhl was so disabled that he could not perform the essential functions of his job, with or without reasonable accommodation. Third, Home Depot argues that, even if Mr. Uhl has met his prima facie case burden, it acted for a legitimate, non-discriminatory reason and Mr. Uhl has failed to show that this reason was pretextual. The Court considers each of these arguments, in turn.

A. Was Mr. Uhl Disabled?

Home Depot's first argument can be dispatched rather easily. During the relevant time period,[2] Mr. Uhl was legally

---

[2] The ADA Amendments Act of 2008 substantially liberalized the ADA's definition of disability, effective January 1, 2009. See Pub.L. 110-325, 112 Stat. 3553 (2008). The Act does not, however, apply retroactively. See Ragusa v. Malverne Union Free School Dist., 2010 WL 2490966, *4, n.2 (2d Cir. June 21, 2010). Here, the underlying events all took place in 2005 and 2006. So the traditional ADA

8

"disabled" if he suffered from an impairment that substantially limited one or more major life activities. Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005). "[M]ajor life activities" are "activities that are of central importance to daily life," and include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. (citations and quotations omitted). "Substantially limits" means: (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. Id. at 57 (citing 29 C.F.R. § 1630.2(j)(1)). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." Id.

Here, the Duty Status Reports and Dr. Koenig's testimony support that, during the relevant period, Mr. Uhl could not walk outside for more two hours, and could not climb, kneel, bend, stoop, or twist at all. (Koenig Dep. Exs. U, V, W; Pl. Ex. 11). In so doing,

---

framework applies.

9

Mr. Uhl has established triable issues of fact concerning whether he was disabled under the ADA. See Capobianco, 422 F.3d at 56 (noting that walking is a major life activity); Cook v. Deloitte & Touche, LLP, 03-CV-3926, 2005 WL 2429422, at *11 (S.D.N.Y. 2005) (an "absolute inability" to bend is substantial limitation on a major life activity).

2. Could Mr. Uhl Perform The Job's Essential Functions?

Home Depot's second argument deserves more consideration. As discussed above, to establish a prima facie case of discrimination, Mr. Uhl most show that he was otherwise qualified to perform a Sales Associate's "essential functions," with or without reasonable accommodation. He has failed to do so.

The undisputed facts demonstrate that Home Depot required its Sales Associates to meet "Physical Job Requirements" that included "[b]ending," "stooping," "twisting," and "moving around the store to assist Customers." (Pl. Ex. 22 at DEF-0295); Reville v. Niagara Frontier Transp. Authority, 04-CV-0258, 2009 WL 5167645, at *8 (W.D.N.Y. 2009) ("The employer's written job description, especially, is given substantial weight" in determining a job's essential functions) (internal citations and quotations omitted). Likewise, during her deposition, Mr. Uhl's supervisor, Lila Vlahidis testified that a Sales Associate must perform essential functions such as "[d]ownstocking from a ladder." (Pl. Ex. 4S at p. 41). But,

10

during the relevant time period, Dr. Koenig medically precluded Mr. Uhl from climbing ladders, or from any bending, stooping, or twisting. (Koenig Dep. Exs. U, V, W; Pl. Ex. 11). Thus, the undisputed facts demonstrate that Mr. Uhl could not perform a Sales Associate's "essential functions."

At most, Mr. Uhl has shown that, when he faced similar medical restrictions in 2003, Home Depot crafted a "light duty" position that enabled him to work while excusing him from some undisputed essential functions of a Sales Associate position. But, contrary to Mr. Uhl's belief, this does not mean that Home Depot previously gave him a "reasonable accommodation," that it must afford him again. Instead, it supports that Home Depot previously <u>exceeded</u> its legal obligations, by affording him a <u>more</u> than reasonable accommodation. Home Depot's prior, voluntary effort to accommodate Mr. Uhl in excess of its legal obligations is admirable. But it does not compel Home Depot to continue to accommodate him beyond what the law requires. <u>See</u> <u>Holbrook v. City of Alpharetta, Ga.</u>, 112 F.3d 1522, 1528 (11th Cir. 1997); <u>Walton v. Mental Health Ass'n. of Southeastern Pennsylvania</u>, 168 F.3d 661, 671 (3d Cir. 1999). This is because "[a] reasonable accommodation can never involve the elimination of an essential function of a job." <u>Shannon v. New York City Transit Authority</u>, 332 F.3d 95, 100 (2d Cir. 2003); <u>Gilbert v. Frank</u>, 949 F.2d 637, 644 (2d Cir. 1991) (request that coworker perform

"heavy lifting" instead of Mr. Uhl not a reasonable accommodation).

Mr. Uhl also appears to argue (albeit sparsely) that the June 2006 Physical Capabilities Evaluation Form demonstrates his ability to perform a Sales Associate's essential functions. (Pl. Opp. Br. at 3). The Court disagrees, because the Form's representations conflict with Mr. Uhl's <u>own</u> allegations. Specifically, whereas the Form represents that Mr. Uhl had no restrictions on bending and twisting, and only mild restrictions on climbing, Mr. Uhl <u>himself</u> acknowledged that he "was precluded from performing any job that involved climbing, kneeling, bending, [and] twisting," and was "completed limited" from kneeling, bending, and climbing at all. (Pl. Opp. Br. at 11, 13). Because Mr. Uhl has affirmatively represented to the Court that he could not climb, bend, or twist during the relevant time period, he cannot create a trial issue of fact through a Form that says otherwise.[3]

---

[3] The Physical Capabilities Evaluation Form has other problems. As noted above, Dr. Koenig did not fill out this Form and, in fact, never saw it before his deposition. (Koenig Tr. 82). And the Form directly conflicts with Dr. Koenig's roughly contemporaneous recommendations from March 2006 and July 2006, which imposed severe restrictions on activities such as bending, twisting, and climbing. (Koenig Tr. 57-59, 65, 69-71). In any event, the Form set forth that Mr. Uhl could only walk for two hours a day, and did not differentiate between inside and outside walking. It is undisputed that Mr. Uhl walked two hours a day as a letter carrier. (Pl. 56.1 Stmt. ¶ 28; Uhl Dep. Tr. at 57-58). So, even if the Court somehow credited the Form over Mr. Uhl's own allegations and Dr. Koenig's recommendations, the Form would still not establish that Mr. Uhl could perform the essential functions of his Home Depot job. After all, if Mr. Uhl could only walk two hours a day, and reached that limitation during his day job as a letter carrier, he could not then fulfill a Sales Associate's essential function of "moving around the store to assist Customers." (Pl. Ex. 22).

3. <u>Home Depot's Legitimate Non-Discriminatory Reason</u>

Because the Court finds that Mr. Uhl has not shown that he could perform a Sales Associate's essential functions, he has not set forth a <u>prima</u> <u>facie</u> case of discrimination. Thus, the Court does not reach Home Depot's argument that it had a legitimate non-discriminatory reason for terminating him.

<u>CONCLUSION</u>

Home Depot's summary judgment motion is GRANTED. The Clerk of the Court is directed to mark this matter as CLOSED.

SO ORDERED.

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
August <u>13</u>, 2010